UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CYNTHIA FINKS, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 08-1272 (ESH) |
| LIFE INSURANCE COMPANY OF NORTH AMERICA, | ) ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION**

Upon consideration of the parties' submissions regarding prejudgment interest (Dkt. Nos. 21, 22), and for the reasons stated below, the Court orders defendant to pay plaintiff an additional $4,082.37 in interest.

**BACKGROUND**

Plaintiff Cynthia Finks ("Finks") filed suit to compel defendant Life Insurance Company of North America ("LINA") to provide Long Term Disability benefits to plaintiff, under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*. Plaintiff alleges that she became disabled on or about September 7, 2006, as a result of chronic Lyme disease. She alleges that, as a result of this disability, she was entitled to monthly disability benefits beginning on December 7, 2009,[1] and ending on July 21, 2009, when she

---

[1] Plaintiff's disability policy requires a 90-day elimination period. Thus, the benefits period began on December 7, 2009, ninety days after plaintiff became first became disabled.

1

returned to work.  Plaintiff further asserts that she is entitled to prejudgment interest totaling $10,270.09.[2]

After this lawsuit was filed, LINA approved plaintiff's disability benefits.  On April 15, 2009, LINA issued a check to plaintiff for $121,217.52, representing LINA's calculation of $115,762.83 in disability benefits and $5,454.69 in interest.

## ANALYSIS

Although defendant's payment of plaintiff's disability benefits resolved the central dispute in this case, the parties continue to disagree regarding the amount of interest owed to plaintiff.

In calculating the interest of $5,454.69, LINA applied the 3.25% prime rate that was in effect in April 2009 for the entire period of delayed benefits without compounding the interest.  Plaintiff argues that LINA must instead apply the varying prime rates that were in effect during each of the months that plaintiff was owed a disability monthly payment.  Applying these varying monthly prime rates (which ranged from 8.25% to 3.25%) to the disability benefits payments that plaintiff should have received, and compounding monthly, plaintiff concludes that defendant owes her a total of $10,270.09 in interest.[3]

The decision on whether to award prejudgment interest falls within this Court's discretion.  *See Forman v. Korean Air Lines Co., Ltd*, 84 F.3d 446, 450 (D.C. Cir. 1996); *McKesson Corp. v. The Islamic Republic of Iran*, 116 F. Supp.2d 13, 40 (D.D.C. 2000).  Because no exceptional or unusual circumstances exist that would make an interest award inequitable in this case, the Court concludes that an award of prejudgment interest is appropriate.  *See Moore v.*

---

[2] Plaintiff concedes that the interest period commenced on March 6, 2007, the date on which the initial disability payment should have been made.
[3] Alternatively, plaintiff argues that the interest should be compounded *annually* and claims $10,063.98 in interest.

*CaptialCare, Inc.*, 461 F.3d 1, 13 (D.C. Cir. 2006) (holding that prejudgment interest on unpaid ERISA benefits is presumptively appropriate); *see also Rodgers v. United States*, 332 U.S. 371, (1947) (explaining that courts should weigh the "relative equities" when determining whether prejudgment interest should be awarded where Congress has been silent on the subject).

The decision on how to compute prejudgment interest is also left to the Court's discretion. *Forman*, 84 F.3d at 450. In calculating a prejudgment award in an ERISA case, the Court has three primary objectives: (1) preventing the unjust enrichment of the defendant; (2) ensuring that the plaintiff is made whole; and (3) promoting settlement while deterring any unfair benefit from litigation delay. *Moore*, 461 F.3d at 13.

As the D.C. Circuit has stated, the most appropriate prejudgment interest rate is the prime rate, *i.e.*, the rate that banks charge for short-term unsecured loans to credit-worthy customers. *Id.* at 450; *see Cement Division, Nat'l Gypsum Co. v. City of Milwaukee*, 31 F.3d 581, 587 (7th Cir.1994), *aff'd*, 515 U.S. 189 (1995); *Mentor Ins. Co. v. Brannkasse*, 996 F.2d 506, 520 (2d Cir.1993); *Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 939 F.2d 1540, 1545 (Fed.Cir.1991); *see also Alberti v. Klevenhagen*, 896 F.2d 927, 938, *vacated in part*, 903 F.2d 352 (5th Cir.1990) (holding a district court's failure to use the prime rate to be in error). Thus, this Court will rely upon the Federal Reserve statistical release of prime rates (Exhibit 5 to plaintiff's memorandum) to determine the appropriate interest award. *See In re NETtel Corp., Inc.*, 327 B.R. 8, 9 (Bankr. D. Dist. Col. Apr. 15, 2005).

In light of the steep decline in interest rates over the past year, and mindful of the Court's objective to make the plaintiff whole, the Court has elected to apply the varying prime rates that existed at the time that plaintiff would have received her monthly disability benefits payments.[4]

---

[4] The historic prime rates are as follows: 8.25% (Mar. 6, 2007 – Sept. 6, 2007), 7.75% (Oct. 6, 2007), 7.71% (Nov. 6, 2007), 7.5% (Dec. 6, 2007), 7.25% (Jan. 6, 2007), 6.0% (Feb. 6, 2008 – Mar. 6, 2008),

By applying the prime rate that was in effect to the amount that was due and owing to plaintiff at that time, the Court ensures that plaintiff is made whole.  *See Moore*, 461 F.3d at 450 (recognizing the importance of "ensur[ing] that a beneficiary is fully compensated, including for the loss of the use of money this is his").  The Court will not, however, compound the interest, as plaintiff requests.  *See Rastall v. CSX Transp., Inc.*, 697 A.2d 46, 53 (D.C. Cir. 1997) (explaining that prejudgment interest is not usually compounded absent a contractual provision).

      The Court therefore concludes that Finks should be paid $9,537.06 in interest.  As defendant has already paid $5,454.69 in interest, it must pay plaintiff $4,082.37 in additional interest within ten dates from the entry of judgment.[5]

                                           /s/
                         ELLEN SEGAL HUVELLE
                         United States District Judge

Date:  May 27, 2009

---

5.25% (Apr. 6, 2008), 5.21% (May 6, 2008), 5.0% (June 6, 2008 – Sept. 20, 2008), 4.5% (Oct. 21, 2008), 4.0% (Nov. 20, 2008), 3.79% (Dec. 21, 2008), 3.25% (Jan. 21, 2009 – May 27, 2009).

[5] If the parties are unable to resolve the issue of attorney's fees, defendant shall file its opposition on or before June 8, 2009, and at that time, the Court will refer the matter to a magistrate judge.

4