UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CYNTHIA FINKS,

    Plaintiff,

    v.

LIFE INSURANCE COMPANY
OF NORTH AMERICA,

    Defendant.

Civil Action No. 08-1272 (ESH)(AK)

## MEMORANDUM OPINION[1]

Upon consideration of the Plaintiff's Mini-Brief on Attorney Fees ("Mini-Brief") [20] and the Defendant's response thereto ("Response") [25], and for the reasons stated below, this Court finds that Plaintiff is entitled to recover her attorney's fees associated with litigation, but not fees associated with administrative proceedings. An appropriate Order accompanies this Memorandum Opinion.

## I. BACKGROUND

Plaintiff Cynthia Finks ("Plaintiff") sued Defendant Life Insurance Company of North America ("LINA" or "Defendant") to compel LINA to pay her Long Term Disability benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et*

---

[1]This case was referred to the undersigned for determination of Plaintiff's Mini-Brief on Attorney Fees [20]. (6/09/09 Order of Referral [26].)

*seq*. Plaintiff asserts that she first became ill with chronic Lyme disease on or about September 7, 2006, a condition that she alleges made her disabled. (Response at 1.) As a result of her disability, Plaintiff claimed that she was entitled to monthly disability benefits beginning on September 7, 2006, and ending on July 21, 2008, when she returned to work. (*Id.* at 1, 6.) According to Defendant, "the subject policy requires a 90-day elimination period[;] [thus], the benefits at issue are those from December 2006 through July 2008." (Response at 6.) LINA received Plaintiff's initial claim for disability benefits on February 7, 2007, and subsequently "sent [Plaintiff] a letter on April 17, 2007, informing her that her claim for long term disability ("LTD") benefits had been denied." (*Id*. at 1, 5.) In its denial letter, dated April 13, 2007, LINA stated that "[b]ased on medical information received, we find the available medical information does not provide consistent evidence to support significant functional impairment from performing your occupation." (Pl.'s Exh. 3 at 3.) Plaintiff subsequently submitted her appeal on October 9, 2007 (Response at 5), which was denied by LINA in January of 2008 (*Id*. at 5-6.) In its January 8, 2008 denial letter, LINA stated that "the office notes on file do not support a severity in symptoms to support [Plaintiff's] inability to work as a concert violinist." (Pl.'s Exh. 7 at 2.)

  Plaintiff filed this civil action against Defendant on July 24, 2008. During the course of this litigation, on April 15, 2009, LINA approved Plaintiff's disability benefits and paid Plaintiff $121,217.52, representing LINA's calculations of disability benefits ($115,762.83) and interest ($5,454.69). (May 27, 2009 Mem. Op. [24] at 2.) Defendant claims that it eventually paid Plaintiff her benefits "based on input from counsel and the Court during the course of litigation." (Response at 6.) Plaintiff subsequently sought an additional $4,815.40 in interest. Plaintiff was

awarded $4,082.37 in interest by the trial court after an adjustment was made using a variable interest rate rather than a fixed rate. (Mem. Op. [24] at 3-4.)  Plaintiff now attempts to recover attorney fees, which include fees incurred during administrative (pre-litigation) and judicial proceedings.

**II. LEGAL STANDARD**

The Employment Retirement Income Security Act of 1974 ("ERISA") provides that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1).  In order to guide courts in exercising their discretion under this ERISA fee provision, the D.C. Circuit has articulated five factors for courts to consider. *Eddy v. Colonial Life Ins. Co.,* 59 F.3d 201, 206 (D.C. Cir. 1995).  The factors include: (1) the losing party's culpability or bad faith; (2) the losing party's ability to satisfy a fee award; (3) the deterrent effect of such an award; (4) the value of the victory to plan participants and beneficiaries, and the significance of the legal issue involved; and (5) the relative merits of the parties' positions. *See i.e, Becker v. Weinberg Group, Inc*., 554 F. Supp. 2d 9, 15 (D.D.C. 2008), *citing Grand Union Co. v. Food Employers Labor Relations Ass'n*, 257 U.S. App. D.C. 171 (D.C. 1987).  In its adoption of these factors, the Sixth Circuit has weighed them so that "none of the five [ . . . ] factors standing alone is determinative, a district court must consider each of the five factors before deciding whether or not to exercise its discretion." *Schwartz v. Gregori*, 160 F.3d 1116, 1119 (6th Cir. 1998).  Moreover, a court can use these factors to weigh each side's argument in order to decide if fee-shifting is appropriate.

## III. ANALYSIS

### A. JUDICIAL PROCEEDING FEES

This Court begins its analysis of judicial proceeding fees by examining each of the five factors set forth in the *Eddy* case and determining whether these factors weigh in favor of Plaintiff's recovery of fees.

**1. The losing party's culpability or bad faith**

*a. Defendant's Review of Medical Records*

Plaintiff alleges that LINA created a false impression that it was seeking expert review of her appeal. (Mini-Brief at 7.) More specifically, Plaintiff asserts that LINA sent her two letters (dated December 7, 2007 and January 4, 2008) stating that its decision concerning Plaintiff's appeal was delayed because her file was "being referred for a medical review with a Medical Consultant." (LINA's letters attached as Pl.'s Exhs. 5, 6.) These letters did not mention that LINA needed additional information to make a decision on Plaintiff's appeal.[2] LINA's computer log shows that Plaintiff's case file was referred to the medical consultant on January 8, 2008, then referred back so quickly that it would have been impossible for a consultant to thoroughly review the content.[3] (Mini-Brief at 7.) In addition, the Medical Consultant's "conclusion" was noted by Diane Accetta ("Accetta"), the LINA Appeal Claim Manager who signed the denial

---

[2] Plaintiff provided additional medical information with her appeal on October 9, 2007; however, LINA then sent a letter dated October 16, 2007, "informing [Plaintiff] that any additional supporting medical information must be submitted by November 6, 2007." (Response at 5.)

[3] Plaintiff contends that the log states that the record was received by Dr. McCool, then sent back on the same date at the same time. (Response at 7.)

letter, and not Dr. McCool, the medical consultant. (*Id*.)  Plaintiff points out that Dr. McCool did not document any aspect of his review of the 200+ page medical record and LINA proffers no evidence that Dr. McCool reviewed Plaintiff's file other than a notation by Accetta summarizing McCool's conclusion. (*Id*.)

Plaintiff also alleges that Dr. McCool was "neither an expert nor an outsider," which makes the term "consultant" misleading. (*Id*.)  Dr. McCool's full-time job was in claim management at LINA. (*Id*. at 7-8.)  Because of this, Plaintiff argues that there was no reason for LINA's repeated delays in responding to her appeal. (*Id.* at 8.)  Plaintiff contends that these delays, coupled with "rubberstamping" or having another employee sign off with the medical consultant's name, show bad faith. (*Id*.)

In response, LINA states that "Plaintiff confuses the date and time of entry as meaning the date and time that the events took place." (Response at 10.)  Defendant asserts that Dr. McCool not only thoroughly reviewed Plaintiff's claim file, but even questioned one aspect of her diagnosis.[4] (*Id*.)  In addition, he reviewed the file thoroughly enough to determine that the appeal only referenced subjective or non-existent symptoms. (*Id*.)  However, LINA's allegations that Dr. McCool reviewed Plaintiff's file are unsupported by record evidence and the fact that Dr. McCool's "review" took place on January 8, 2008, which is the same date as LINA's second denial letter, lends credence to the fact that such review was cursory at best.

LINA argues that a finding of bad faith is unwarranted because any delay in awarding Plaintiff her benefits is attributable to LINA's need for objective evidence to support the listed physical limitations of what Defendant considered merely a reiteration of the Lyme disease

---

[4]Dr. McCool questioned whether Plaintiff also had Babesiosis.

diagnosis. (*Id.*)  Defendant alleges that Dr. Katz, one of plaintiff's doctors, would not comment on her medical condition as of September 26, 2007 when LINA contacted him. (Response at 11.) On April 5, 2007, LINA's nurse case manager contacted another one of Plaintiff's doctors, Dr. Levin, but he also would not comment on Plaintiff's functional capacity. (*Id.*)  Plaintiff also saw Dr. Ryser, who made notes concerning her condition; however, LINA claims that these notes were too vague.[5] (*Id.*)

      Defendant states that Dr. Ryser eventually allowed a nurse practitioner from her office to speak with LINA, but the nurse did not provide any information that revealed evidence to support imposed restrictions for Plaintiff. (*Id.*)  LINA claims that Plaintiff provided an assessment from Dr. Cameron (her attorney's appointed expert) who agreed with Ryser but noted that Dr. Cameron did not provide any objective findings to support a restriction of no work. (Response at 12).  LINA contends that ERISA courts across the country have held that plan administrators are allowed to require objective evidence of physical limitations imposed by the symptoms of such a diagnosis. (*Id.*)

      While the record indicates that LINA may have been justified in its initial denial of Plaintiff's claim because of lack of conclusive information about Plaintiff's condition, LINA's delay of Plaintiff's appeal due to its purported need for expert review of the claim suggests bad faith.  The record in this case indicates that LINA's efforts to obtain the medical information from Plaintiff's physicians were thwarted when some of the doctors would not respond to

---

[5] According to LINA, these notes did not "specify [Plaintiff's] symptoms, contain any physical findings that would support functional deficiencies, or explain any reason beyond a diagnosis of Lyme disease why [Plaintiff] would be unable to play the violin." (Response at 11.)

inquiries by LINA prior to its initial denial. The two letters sent to Plaintiff stating that there was a delay in determining her appeal did not however mention any need for additional medical information. Instead, these letters indicated that any delay was attributable to LINA's need for its own medical evaluation. There is no evidence that LINA's medical consultant evaluated Plaintiff's claim file other than a short notation [made by someone else] reflecting his finding. This delay in the review of Plaintiff's appeal, coupled with the review by Dr. McCool, which was inadequately documented and would not justify such a delay, weighs in favor of a finding of bad faith against LINA. Moreover LINA was not foreclosed from having its own independent medical examination of the Plaintiff. *See generally Kalish v. Liberty Mutual/Liberty Life Assur. Co. of Boston*, 419 F.3d 501, 512 (6th Cir. 2005)(holding additional references to plaintiff's underlying condition, and the fact a medical review was done only by a nurse employed by defendant, should have prompted the defendant to investigate further before denying plaintiff's disability benefits.)

    *b. Backdating*

Plaintiff alleges that LINA backdated its denial letter in an effort to conceal the fact that it missed the 90-day deadline for issuing a decision on the appeal. (Mini-Brief at 5.) According to the Long Term Disability Plan documents, LINA had 90 days to respond to Plaintiff's appeal.[6] (*Id*.) According to Plaintiff, the sequence of events were:

- Plaintiff submitted her appeal on October 9, 2007. The 90-day decision deadline was on January 7, 2008.

- The letter denying the appeal had a typed date of January 8, 2008.

---

[6] This response period includes a 45-day deadline with a 45-day extension.

- Plaintiff did not receive the letter until January 28, 2008.

- The original postage meter date on the letter was January 19, 2008. (*Id*. at 5-6).

Plaintiff also points out that Accetta, the LINA employee who affirmed the denial of Plaintiff's claim, made an entry in the company's log system stating that she mailed the letter on January 16, 2008. (*Id*.)

In response, LINA claims that any delay was unintentional and caused by internal delays between its claims department and mail-room. (Response at 9.)   LINA further states that:

> There was no incentive to backdate. ERISA caselaw is clear that, at most, a plan administrator's failure to meet any regulatory requirement, including appeals deadlines, enables a claimant to proceed directly to court without waiting for the denial to be issued, and *might* trigger a *de novo* review even when the plan provides deference to the administrator (*Id*.)

The company notes that there is no language in ERISA that suggests an automatic entitlement to benefits for a claimant if a plan administrator misses a deadline that concerns a claimant's appeal. (*Id.*)  LINA believed that this case would be reviewed *de novo* regardless of when it sent out its denial letter.

Despite claiming that there was no harm committed by returning a decision late to Plaintiff, this Court concludes that there was bad faith on the part of LINA.  Even if the letter was written on January 8, 2008, then it would have still been one day past the 90-day deadline, and this does not take into account that the letter in this case was not received until January 28, 2008. LINA admits to missing the deadline, and adopts a cavalier attitude about the necessity of abiding by the deadlines in ERISA cases.  The Court finds that the factor of bad faith weighs in Plaintiff's favor because Plaintiff has discredited LINA's suggestion that its need for a medical evaluation caused LINA's delay in responding to Plaintiff's appeal and Plaintiff has

demonstrated that LINA admittedly does not find it necessary to comply with ERISA deadlines.

**2. LINA's ability to satisfy a fee award**

This factor weighs in favor of the Plaintiff as LINA does not contest that it has the ability to satisfy an award of attorneys' fees. (Response at 13.)

**3. The deterrent effect on LINA of such an award**

Plaintiff suggests that awarding attorneys' fees is necessary because ERISA imposes no penalties on an insurance company that refuses to pay benefits, and accordingly, fee-shifting is the only deterrent to prevent insurance companies from refusing to pay such benefits. (Mini-Brief at 9.)  In response to that contention, Defendant asserts that insurance companies have an incentive not to deny meritorious claims because such behavior would negatively impact their reputation and yield unsatisfactory fringe benefits for employees. (Response at 13.)  LINA argues that this negative result would outweigh any business benefit that it would achieve by causing delays. (*Id*.)  LINA asserts that an insurance company that continually conducts itself in such a manner would most likely lose participants due to its negative reputation.

Both parties set forth valid arguments regarding this factor but the caselaw examining this deterrence factor weighs in favor of Plaintiff's position.  *See Eddy* 59 F.3d at 212 ("Because ERISA is designed to protect the interests of plan participants and their beneficiaries, the deterrent purpose of awarding attorneys' fees extends not only to deterring violations of ERISA but also to deterring unnecessary prolongation or unjust resolution of ERISA claims"); *see also Becker,* 554 F. Supp. 2d at 18 ("If [defendants] understood that clearly erroneous actions taken by them [. . .] would be subject to attorneys' fees, that might well deter them from engaging in

such conduct."); *see also Risteen v. Youth for Understanding,* 2003 WL 22011766 (D.D.C. 2003)("Awarding attorney's fees to [Plaintiff] will provide future employers added incentive to comply with ERISA [. . .] regulations, and encourage employers to resolve such disputes sooner rather than later, before attorney's fees mount").

Applying the factors outlined by this Circuit for determining *vel non* legal fees incurred by Plaintiff and the finding by this Court that the record supports a conclusion that Defendant did not have a material basis to deny Plaintiff her disability benefits, the deterrence factor weighs in favor of Plaintiff.

**4. The value of the victory to plan participants and beneficiaries; and the significance of the legal issue involved**

Plaintiff argues that her ability to enforce the terms of her insurance contract and recover her benefits will help all participants and beneficiaries in their ability to do likewise. (Mini-Brief at 9.) Plaintiff contends that LINA may be dissuaded from engaging in similar dilatory behavior with other participants in the future, i.e. denying benefits until a lawsuit is filed. (*Id.* at 10.) Overall, this will encourage LINA to abide by its contracts.

LINA correctly agrees that an insurance company owes a fiduciary duty to all plan beneficiaries, not just the potential beneficiary who is applying for benefits. (Response at 14.)

> Encouraging insurers to pay questionable claims where the extent of the claimant's physical limitations are unclear, and where the claimant's healthcare providers will not provide any objective evidence to support claimed limitations, as occurred with [Plaintiff], would serve to increase the operating cost of the plan . . .

(*Id.*) This could force the employer to discontinue the benefit.

Both parties assert valid broad-based public policy arguments regarding this factor;

accordingly, the Court finds that this factor weighs equally in favor of both.

**5. The relative merits of the parties' positions**

Plaintiff insists that there is evidence that would suggest that she had a severe reaction to Lyme disease, even though this only happens to a small percentage of patients. (Mini-Brief at 11.) Plaintiff's attorney retained as an expert Dr. Cameron, who wrote a report (Pl.'s Exh. 2) on September 27, 2007, summarizing medical information and tests and concluding that Plaintiff had a long term disability. (*Id.* at 10.) Dr. Cameron performed "an independent evaluation on [Plaintiff's] functionality." (Exh. 2 at 5.) He also reviewed Plaintiff's medical records and agreed with the July 31, 2007 assessment by Dr. Ryser. (Exh. 2 at 4, 7.) Plaintiff states that her appeal of her claim for benefits was denied by LINA without adequate consideration or analysis of Dr. Cameron's report on the company's part. (*Id.*)

In response, LINA states that it properly denied Plaintiff's claim. (Response at 14.) The company believes that her medical providers, attorney, and Dr. Cameron failed to provide an objective basis for LINA to conclude that the physical limitations imposed by the symptoms of her Lyme disease were severe enough to prevent her from being able to play the violin. (*Id.*) LINA states that the diagnosis of Lyme disease is not itself a disabling condition, and the problem with Plaintiff's argument is that she only conveys that Lyme disease is a disabling condition. (*Id*. at 15.) In other words, LINA alleges that Plaintiff's argument fails to demonstrate that she was disabled. (*Id.*) It only demonstrates that she *could* be disabled if she had chronic Lyme disease. The Defendant also recounts how Plaintiff's healthcare providers were not forthcoming, despite LINA giving them ample opportunity to provide responsive information. (*Id.*)

11

During the review of the initial claim, LINA had a difficult time obtaining medical information from Plaintiff's physicians. However, during the review of her appeal, Plaintiff submitted additional medical information with her appeal letter on October 9, 2007. (Response at 5.) Plaintiff also provided LINA with a detailed report by Dr. Cameron, which summarized her medical conditions and treatment. (Pl.'s Exh. 2.) LINA sent two letters to Plaintiff on December 7, 2007 and January 4, 2008, respectively, which indicated that its appeal of her claim for benefits needed to be reviewed by its "Medical Consultant." (Pl.'s Exhs. 5, 6.) LINA affirmed its denial of the appeal on the same date that its "Medical Consultant" reviewed Plaintiff's medical information. While LINA's denial was presumably based on a lack of objective evidence to support Plaintiff's claim of disability, this Court notes that LINA's own consultant failed to make any objective evaluation of Plaintiff's condition, and in fact failed to make any notations at all relating to his medical review.

This Court finds that by the time Plaintiff submitted her appeal and all supporting documentation, the cumulative medical evidence certainly favored a finding of disability. Thus, the Court finds that this "relative merit" factor weighs in favor of Plaintiff. In evaluating the five factors set forth in *Eddy*, the Court finds that the majority of these factors favor Plaintiff and therefore an award of legal fees relating to the litigation of this matter is warranted.

### B. ADMINISTRATIVE PROCEEDING FEES

The D.C. Circuit has not addressed the issue of whether fees incurred during an ERISA administrative review are recoverable. (*Id*. at 16). The Act provides that "[i]n any action under this title . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a

reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1).

Plaintiff asserts that the D.C. Circuit should not adopt the bright-line rule for non-litigation attorneys' fees fashioned by the Ninth Circuit Court of Appeals in *Cann v. Carpenters' Pension Trust Fund for N. Cal.* 989 F.2d 313 (9th Cir. 1993) (Mini-Brief at 11). The *Cann* decision looked to the ERISA phrase "in any action" and held that an "action" must refer to a filing in court rather than administrative proceedings. *Id*. Plaintiff argues instead that this Circuit should follow *Hedley-Whyte v. Unum Life Ins. Co. of Am.,* which suggests that the phrase "in any action" would promote fee-shifting, not limit it. 1996 U.S. Dist. LEXIS 5880 (D. Mass. Mar. 6, 1996) at *11 n5. Plaintiff believes that *Hedley-White* is more persuasive than *Cann* and that her claim for fees incurred during the administrative phase of this case falls within the statutory language "in any action under this title . . . by a participant, beneficiary, or fiduciary." 29 U.S.C. § 1132(g)(1).

Plaintiff further argues that there are courts that have followed the test in *Cann* but did not apply its ruling strictly. (Mini-Brief at 12). These courts have awarded fees resulting from investigation and preparation work prior to filing in court. *Dishman v. Unum Life Ins. Co. of Am.*, 269 F.3d 974, 987-988 (9th Cir. 2001); *Trs. of the E. States Health & Welfare Fund v. Crystal Art Corp.*, 2004 U.S. Dist. LEXIS 8932, 9-10 (S.D.N.Y. May 18, 2004); *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 561 (1986).

Plaintiff contends that LINA did not provide good-faith consideration of her administrative appeal but rather, LINA stalled payment of disability benefits. (Mini-Brief at 13.) Plaintiff states that the Court should not diminish the value of her benefits simply because she used an attorney to conduct a good-faith effort to present her case administratively. (*Id*.) Plaintiff

believes that she "attempted to avoid litigation, while LINA did everything to force litigation." (*Id.*)

In defense of its claim that Plaintiff is not entitled to recover attorneys' fees for administrative proceedings, LINA states that its position is consistent with the unanimous position of the seven circuits who have addressed this issue. (Response at 16.) Each circuit that has addressed the fee issue has determined that awarding pre-litigation fees is not appropriate. (*Id*.) Most important is the decision in *Cann v. Carpenters' Pension Trust Fund for N. Cal.* The *Cann* court held that an award of fees for administrative processes would be contrary to ERISA. *Cann,* 989 F.2d at 314. The *Cann* court stated that "[t]he Judge [below] cannot have abused his discretion by denying an award for attorneys' fees for the administrative proceeding unless he had discretion to make such an award" *Id.* at 315-16. According to Defendant, the word "action," as it is used in ERISA, designates only in-court proceedings and not administrative proceedings. (Response at 16-17).

LINA then criticizes Plaintiff's reliance on *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*. 478 U.S. 546 (1986), in which the United States Supreme Court interpreted the term "action" and awarded attorneys' fees from post-litigation administrative proceedings. (*Id*. at 18). Defendant points out that the Third, Sixth, Eighth, and Ninth Circuits have distinguished this case because the administrative proceedings came after the litigation and "the administrative proceedings were necessary to enforce a final judgment that had been already obtained." *See Hahnemann Univ. Hosp. v. All Shore, Inc.,* 514 F.3d 300, 313-14 (3d Cir. Pa. 2008), *citing Parke v. First Reliance Standard Life Ins. Co.,* 368 F.3d 999, 1011 (*citing Anderson v. Proctor & Gamble Co.,* 220 F.3d 449, 453; *Cann,* 989 F.2d at 317). Defendant states that the

same reasoning applies to the case at hand. Moreover, it was Congress' clear intention to exclude the word "proceedings" from ERISA's attorney's fees provision. (Response at 19.)

Caselaw clearly favors LINA's position regarding a prevailing party's inability to recover pre-litigation attorneys' fees. Seven circuits have ruled in favor of Defendant's interpretation of the ERISA provision at issue, and accordingly, this Court holds that the Plaintiff is not allowed to recover legal fees incurred during administrative proceedings.


DATED: July 24, 2009            _____/s/_____
                                ALAN KAY
                                UNITED STATES MAGISTRATE JUDGE